# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| | : | |
| CHRISTOPHER J. MAYO, | : | |
| *Plaintiff*, | : | |
| | : | Civil No. 3:19-cv-781 (VAB) |
| v. | : | |
| | : | |
| CHRIS DOE, *et al.*, | : | |
| *Defendants*. | : | |

## INITIAL REVIEW ORDER

Christopher J. Mayo, ("Plaintiff"), *pro se* and currently incarcerated at Carl Robinson

Correctional Institution in Enfield, Connecticut, has filed a Complaint under 42 U.S.C. § 1983.

Trooper Sergeant Chris Doe, K-9 Trooper John Doe #1, Troopers John Doe #2- #7, Norwich

Police Detective Ryan Kelsey, the Statewide Narcotics Task Force Southeastern, and Troop D –

Montville State Police are all named as Defendants.

Mr. Mayo alleges that Sergeant Chris Doe sexually assaulted him during a stop that did

not result in an arrest. Mr. Mayo seeks monetary and punitive damages of $5,000,000.00, and

mental and emotional damages of $5,000,000.00.

All claims against the Statewide Narcotics Task Force Southeastern and Troop D –

Montville State Police as well as all claims against the individual defendants in their official

capacities are **DISMISSED** under 28 U.S.C. § 1915A(b).

The case will proceed on the excessive force claim against Sergeant Chris Doe, the

failure to intervene claim against Detective Kelsey and the other Doe Defendants, and the

unconstitutional search and seizure claims against all individual Defendants.

I.    **FACTUAL AND PROCEDURAL HISTORY**

   A.  **Factual Allegations**

On October 5, 2017, at 6:30 p.m., Mr. Mayo allegedly arrived at the back of a Chinese restaurant and laundromat in Jewitt City. Compl., ECF No. 1 ¶ 1 (May 21, 2019). Inside the restaurant, he allegedly was approached by six to eight plain clothes Detective Troopers all wearing exposed gold badges. *Id.* ¶ 2. All of these officers were white. *Id.* The officers allegedly took Mr. Mayo's phone from his hand and ordered him out of the restaurant. *Id.* Once outside, they allegedly pulled him around the corner into the alley near his car. *Id.* ¶ 3.

A uniformed state trooper allegedly searched Mr. Mayo's car without permission or a warrant. *Id.* ¶ 4. The trunk allegedly was open and a police dog was laying on the back seat. *Id.* The K-9 officer allegedly had the dog walk around Mr. Mayo multiple times. *Id.* ¶ 5. Although the officer allegedly kept tapping Mr. Mayo's pockets, the dog did not signal. *Id.* The officers allegedly became frustrated. *Id.* Mr. Mayo allegedly stated that he wanted to go home and eat dinner. *Id.* ¶ 6.

Mr. Mayo alleges he saw and heard Sergeant Chris Doe putting on a glove. *Id.* ¶ 7. The Defendants allegedly ordered Mr. Mayo to step to the back of the laundromat and hold the wood cross post of the staircase. *Id.* ¶ 8. Mr. Mayo allegedly "contested," but was afraid of being arrested and began to move slowly. *Id.* Trooper Mike and Trooper Robinson/Robertson allegedly grabbed Mr. Mayo's wrist and held him against the post. *Id.* ¶ 9.

Sergeant Chris Doe then allegedly aggressively penetrated Mr. Mayo's rectum four to five times. Mr. Mayo experienced severe pain. *Id.* ¶ 10.  Mr. Mayo allegedly tried to pull away and yelled "What are you doing?" *Id.* ¶ 11. Sergeant Chris Doe allegedly then pulled his hand out, smiled, removed the glove, and told Mr. Mayo that he could leave. *Id.* ¶ 13. All the

defendants allegedly laughed as he left. *Id.*

Mr. Mayo alleges he is mentally and emotionally disturbed and depressed as a result of this incident and has become impotent. *Id.* ¶ 14.

### B. Procedural History

On May 21, 2019, Mr. Mayo filed his Complaint and a motion to proceed *in forma pauperis*. Compl.; Mot., ECF No. 2 (May 21, 2019).

On June 6, 2019, the Court granted Mr. Mayo's motion to proceed *in forma pauperis*. Order, ECF No. 8 (June 6, 2019).

## II. STANDARD OF REVIEW

Under 28 U.S.C. § 1915A(b), district courts must review prisoners' civil complaints against governmental actors and *sua sponte* "dismiss . . . any portion of [a] complaint [that] is frivolous, malicious, or fails to state a claim upon which relief may be granted," or that "seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see also Liner v. Goord*, 196 F.3d 132, 134 & n.1 (2d Cir. 1999) (explaining that, under the Prisoner Litigation Reform Act, *sua sponte* dismissal of frivolous prisoner complaints is mandatory); *Tapia-Ortiz v. Winter*, 185 F.3d 8, 11 (2d Cir. 1999) ("Section 1915A requires that a district court screen a civil complaint brought by a prisoner against a governmental entity or its agents and dismiss the complaint *sua sponte* if, *inter alia,* the complaint is 'frivolous, malicious, or fails to state a claim upon which relief may be granted.'" (quoting 28 U.S.C. § 1915A)).

Rule 8 of the Federal Rules of Civil Procedure requires that a plaintiff plead only "a short and plain statement of the claim showing that the pleader is entitled to relief," *see* Fed. R. Civ. P. 8(a)(2), to provide the defendant "fair notice of what the . . . claim is and the grounds upon which it rests," *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level" and assert a cause of action with enough heft to show entitlement to relief and "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555, 570. A claim is facially plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Although the Federal Rules of Civil Procedure do not require "detailed factual allegations," a complaint must offer more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." *Twombly*, 550 U.S. at 555–57. Plausibility at the pleading stage is nonetheless distinct from probability, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the claim] is improbable, and . . . recovery is very remote and unlikely." *Id*. at 556 (internal quotation marks omitted).

Complaints filed by *pro se* plaintiffs, however, "must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F. 3d 471, 474 (2d Cir. 2006)) (internal quotation marks omitted); *see also Tracy v. Freshwater*, 623 F. 3d 90, 101–02 (2d Cir. 2010) (discussing the "special solicitude" courts afford pro se litigants).

## III.   DISCUSSION

The Court considers the facts alleged to support possible claims for use of excessive force, unconstitutional search and seizure, and failure to intervene to prevent harm.

### A.  Excessive Force

Claims for use of excessive force by police officers during an arrest or other seizure are considered under the reasonableness standard of the Fourth Amendment. To prevail on an excessive force claim, a plaintiff must show that the amount of force used was objectively unreasonable either as to when or how the force was applied, and that, as a result of the use of force, he suffered some compensable injury. *See Graham v. Connor*, 490 U.S. 386, 396 (1989); *Maxwell v. City of N. Y.*, 380 F.3d 106, 108 (2d Cir. 2004). Whether a given quantum of force is excessive depends on "the facts and circumstances of each particular case, including the severity of the crim at issue, whether the suspect posed an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396.

"The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight" and must allow "for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396–97.

Mr. Mayo contends that Sergeant Chris Doe used excessive force against him. Mr. Mayo alleges that he was sexually assaulted because the defendants were frustrated when the police dog did not detect anything. He allegedly was not actively resisting arrest or attempting to flee, he merely said that he wanted to leave. These allegations are sufficient to state a claim for now. *See Burnes v. Suda*, 2019 WL 56835421, at *2 (D. Conn. Nov. 1, 2019) (Plaintiff "ha[d] stated a plausible excessive force claim against [defendant officers] based on allegations that they punched him several times and shot him with a taser while he was handcuffed on the ground . . . .

Those allegations support an inference that the defendants' use of force . . . , was objectively unreasonable."); (*Swift v. Mauro*, No. 5:04-CV-0899 (NAM/GJD), 2008 WL 207793, at \*1 (N.D.N.Y. Jan. 24, 2008) (finding plaintiff pleaded sufficient facts where he alleged defendant officers "beat him with their fists even though he did not resist arrest and attempted only to defend himself from defendants' unwarranted attack").

Accordingly, Mr. Mayo's excessive force claim will proceed against Sergeant Chris.

### B. Unconstitutional Search and Seizure

The Supreme Court has held that "[t]he police can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot,' even if the officer lacks probable cause." *United States v. Sokolow*, 490 U.S. 1, 7 (1989) (quoting *Terry v. Ohio*, 392 U.S. 1, 30 (1968)). In examining whether an officer had reasonable suspicion at the time of the stop, courts "assess the totality of the circumstances supporting the investigatory stop . . . to decide whether the officer's suspicion of wrongdoing has an objective and particularized basis." *United States v. Muhammad*, 463 F.3d 115, 121 (2d Cir. 2006).

"This process allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person.'" *United States v. Arvizu,* 534 U.S. 266, 273 (2002) (quoting *United States v. Cortez*, 449 U.S. 411, 418 (1981)). Like probable cause, whether "reasonable suspicion exists is an objective inquiry; the 'actual motivations of the individual officers involved' in the stop 'play no role' in the analysis." *Holeman v. City of New London*, 425 F.3d 184, 190 (2d Cir. 2005) (quoting *Whren v. United States*, 517 U.S. 806, 813 (1996)).

Mr. Mayo alleges that he was seized, and his car was searched without a warrant or

consent. Based on the facts alleged, the Court can discern no basis for the search and seizure in this case.[1]

Accordingly, the case will proceed on this claim for further development of the record.

## C.  Failure to Intervene

"It is widely recognized that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994). "Liability may attach only when (1) the officer had a realistic opportunity to intervene and prevent the harm; (2) a reasonable person in the officer's position would know that the victim's constitutional rights were being violated; and (3) the officer does not take reasonable steps to intervene." *Jean-Laurent v. Wilkinson*, 540 F. Supp. 2d 501, 512 (S.D.N.Y. 2008) (citing *O'Neill v. Krzeminski*, 839 F.2d 9, 11–12 (2d Cir. 1988)), *aff'd sub nom. Jean-Laurent v. Wilkerson*, 461 F. App'x 18 (2d Cir. 2012).

Mr. Mayo has alleged a plausible claim for failure to intervene. He alleges that the police dog detected nothing suspicious, all other Defendants were present when Sergeant Chris Doe sexually assaulted him, and all other Defendants stood by and did nothing.

Accordingly, the failure to intervene claim will proceed at this time to enable Mr. Mayo to conduct discovery to determine the identities and specific actions of the Doe Defendants. *See Matthews v. City of N.Y.*, 889 F. Supp. 2d 418, 444 (E.D.N.Y. 2012) ("Because plaintiffs properly allege at least one constitutional violation, plaintiffs are entitled to discovery to

---

[1] Mr. Mayo alleges that all the plain clothes officers were white. He does not identify his race and does not allege that the search and seizure was racially motivated. If he intends to pursue a racial discrimination claim of some kind, he must allege facts supporting this claim in an amended complaint, as directed below.

determine which officers participated directly in the alleged constitutional violations and which officers were present and failed to intervene.").

### D. Defendants Statewide Narcotics Task Force and Troop D

Section 1983 requires that each defendant be a person acting under color of state law. 42 U.S.C. § 1983 ("Every person who under color of any statute, ordinance, regulation, custom or usage of any State . . . subjects or caused to be subjected . . . ."). State agencies, however, are not persons within the meaning of section 1983. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (state agencies cannot be sued under section 1983); *Gonzalez-Torres v. Newson*, No. 3:17-cv-455(SRU), 2017 WL 2369369, at *2 (D. Conn. May 31, 2017) (Connecticut State Police Troop E not person under Section 1983).

Mr. Mayo includes as Defendants the Statewide Narcotics Task Force Southeastern and Troop D – Montville State Police. As state agencies or subdivisions thereof, the Statewide Narcotics Task Force Southeastern and Troop D are not persons within the meaning of section 1983.

Accordingly, all claims against these defendants will be dismissed under 28 U.S.C. § 1915A(b)(1).

### E. Official Capacity Claims

Mr. Mayo indicates that he has named all individual defendants in individual and official capacities. All Doe defendants are state troopers. Thus, they are state officials. Any request for damages from state officials in their official capacities is barred by the Eleventh Amendment unless the state has waived this immunity or Congress has abrogated it. *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985) (Eleventh Amendment, which protects the state from suit for monetary relief, also protects state officials sued for damages in their official capacity). Section 1983 does

not abrogate state sovereign immunity, *Quern v. Jordan*, 440 U.S. 332, 342 (1979), and Mr.

Mayo has alleged no facts suggesting that Connecticut has waived this immunity.

Accordingly, all claims for damages against the Doe Defendants in their official

capacities are dismissed under 28 U.S.C. § 1915A(b)(2).

If, however, Mr. Mayo intended to pursue a claim against the municipality, that claim

also would be barred. A claim against a municipal officer in his official capacity is, in essence, a

claim against the city. *See Brandon v. Holt*, 469 U.S. 464, 471–72 (1985) (noting that suit against

municipal official in his official capacity was a suit against the municipality because liability for

any judgment would rest with the municipality).

Claims against municipalities are considered under the standard for municipal liability

established in *Monell v. Department of Social Servs.*, 436 U.S. 658 (1978). A municipality

cannot be found liable merely because it employs a tortfeasor. *Id.* at 691. To state a cognizable

claim for municipal liability, a plaintiff must demonstrate the existence of an officially adopted

policy or custom that caused his injury and a direct causal connection between that policy or

custom and the deprivation of a constitutional right. *Wray v. City of N. Y.*, 490 F.3d 189, 195 (2d

Cir. 2007); *see also Monell*, 436 U.S. at 694. A plaintiff must show that his rights were violated

as a result of a municipal policy, a municipal custom or practice, or the decision of a municipal

policymaker with final policymaking authority. *City of St. Louis v. Praprotnik*, 485 U.S. 112,

123 (1988).

A municipal policy exists when there is a decision by an official with policymaking

authority, or a formal enactment by the municipality's governing body. *Monell*, 436 U.S. at 690.

A municipal policy generally encompasses more than one incident. *See Ricciuti v. N.Y.C. Transit

Auth.*, 941 F.2d 119, 123 (2d Cir. 1991) ("[A] single incident alleged in a complaint, especially if

it involved only actors below the policy-making level, does not suffice to show a municipal policy[.]").

As Mr. Mayo identifies only a single incident and no decision by a municipal official with policy-making authority, he does not allege any facts to support a claim for municipal liability.

Accordingly, any claim against Detective Kelsey in his official capacity will be dismissed under 28 U.S.C. § 1915A(b)(1).

### F.  Doe Defendants

Mr. Mayo identifies only one defendant by name in the case caption, Detective Ryan Kelsey. All other defendants are Chris Doe or John Doe. He references a "Mike" and "Robinson/Robertson" in the body of the Complaint, but does not include them in the case caption.

Federal Rule of Civil Procedure 10(a) requires that all defendants be named in the case caption. Mr. Mayo does not identify Mike and Robinson/Robertson as any of the Doe defendants. Thus, the Court does not consider Mike and Robinson/Robertson to be named defendants.

The Court cannot effect service on any of the Doe defendants without full names and current work addresses.[2] Accordingly, Mr. Mayo is directed to ascertain the names of the Doe defendants through the discovery process and file an amended complaint with the names of all defendants and specific allegations indicating what actions each defendant took that violated his constitutional rights. Once an amended complaint complying with this Order is filed, the Court will order service on the newly identified defendants.

---

[2] Even if the Court were to consider Mike and Robinson/Robertson as two of the Doe defendants, Mr. Mayo has not provided sufficient information for the Court to effect service.

## IV.    CONCLUSION

All claims against the Statewide Narcotics Task Force Southeastern and Troop D –
Montville State Police as well as all claims against the individual defendants in their official
capacities are **DISMISSED** under 28 U.S.C. § 1915A(b).

The case will proceed on the excessive force claim against Sergeant Chris Doe, the
failure to intervene claim against Detective Kelsey and the other Doe Defendants, and the
unconstitutional search and seizure claims against all individual Defendants.

The Court enters the following orders:

(1)     **The Clerk shall** mail a waiver of service of process request packet containing the
Complaint to Detective Ryan Kelsey at the Norwich Police Department, 70 Thames Street,
Norwich, CT 06360 by **September 11, 2020**, and report to the court on the status of the waiver
request on the thirty-fifth day after mailing. If the Defendant fails to return the waiver request,
the Clerk shall make arrangements for in-person service by the U.S. Marshals Service on him in
his individual capacity and the defendant shall be required to pay the costs of such service in
accordance with Federal Rule of Civil Procedure 4(d).

(2)     **The Clerk shall** send the plaintiff a copy of this Order.

(3)     The Defendant shall file his response to the Complaint, either an Answer or
motion to dismiss, within **sixty (60) days** from the date the waiver form is sent. If he chooses to
file an Answer, he shall admit or deny the allegations and respond to the cognizable claim recited
above. He also may include all additional defenses permitted by the Federal Rules.

(4)     Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be
completed by **March 19, 2021** from the date of this order. Discovery requests need not be filed
with the court.

(5)     All motions for summary judgment shall be filed by **April 23, 2021**

(6)     Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(7)     If Plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that Plaintiff MUST notify the court. Failure to do so can result in the dismissal of the case. Plaintiff must give notice of a new address even if he is incarcerated. Plaintiff should write PLEASE NOTE MY NEW ADDRESS on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If Plaintiff has more than one pending case, he should indicate all the case numbers in the notification of change of address. Plaintiff should also notify the defendant or the attorney for the defendant of his new address.

(8)     Plaintiff shall utilize the Prisoner E-filing Program when filing documents with the court. Plaintiff is advised that the Program may be used only to file documents with the court. Local court rules provide that discovery requests are not filed with the court. D. Conn. L. Civ. R. 5(f). Therefore, discovery requests must be served on defendants' counsel by regular mail.

(9)     Mr. Mayo shall ascertain the names of the Doe defendants and file an amended complaint with the names of all defendants and specific allegations indicating what actions each defendant took that violated his constitutional rights. Once an amended complaint identifying the remaining defendants is filed, the Court will order service on the newly identified defendants.

    **SO ORDERED** this 17th day of August 2020 at Bridgeport, Connecticut.

                                    /s/ _____ ___
                                    Victor A. Bolden
                                    United States District Judge